AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT

for the

Eastern District of California

| | |
|---|---|
| In the Matter of the Search of ) | **FILED** |
| nine electronic devices, further described in ) | Jun 28, 2021 |
| Attachment A, currently located at the Federal ) | CLERK, U.S. DISTRICT COURT |
| Bureau of Investigation, 2001 Freedom Way, ) | EASTERN DISTRICT OF CALIFORNIA |
| Roseville, California ) | |

Case No.    2:21-sw-0548 AC

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

**SEE ATTACHMENT A, attached hereto and incorporated by reference.**

located in the _____Eastern_____ District of _____California_____ , there is now concealed *(identify the person or describe the property to be seized)*:

**SEE ATTACHMENT B, attached hereto and incorporated by reference**

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. §§ 1591(a)(1), (b)(2); 1594(c); 2423(a) | Sex Trafficking of a Child; Conspiracy to Engage in Sex Trafficking; Transportation with Intent to Engage in Criminal Sexual Activity |

The application is based on these facts:

**SEE AFFIDAVIT, attached hereto and incorporated by reference.**

☑ Continued on the attached sheet.

☐ Delayed notice _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

/s/ Matthew Kamilos

*Applicant's signature*

Matthew Kamilos, FBI Special Agent

*Printed name and title*

Sworn to telephonically, pursuant to Fed. R. Crim. P. 4.1.

Date: ___June 28, 2021___

City and state:  Sacramento, California

ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE

PHILLIP A. TALBERT
Acting United States Attorney
BRIAN A. FOGERTY
Assistant United States Attorney
501 I Street, Suite 10-100
Sacramento, CA 95814
Telephone: (916) 554-2700
Facsimile: (916) 554-2900

Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| In the Matter of the Search of:<br><br>nine electronic devices, further described in Attachment A, currently located at the Federal Bureau of Investigation, 2001 Freedom Way, Roseville, California. | CASE NO.<br><br>AFFIDAVIT IN SUPPORT OF AN APPLICATION UNDER RULE 41 FOR A WARRANT TO SEARCH DEVICE |

I, Matthew Kamilos, being first duly sworn, hereby depose and state as follows:

## I.   <u>INTRODUCTION AND AGENT BACKGROUND</u>

1.      I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property—multiple electronic devices—which are currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B.

2.      I am a Special Agent with the Federal Bureau of Investigation ("FBI"), and have been since September 2019.  I am currently assigned to the Sacramento Division, Stockton Resident Agency. I attended more than 20 weeks of training at the FBI Academy in Quantico, Virginia, and received training in areas including cybercrimes, criminal investigations, and constitutional law.  While employed by the FBI, I have investigated federal criminal violations related to child exploitation, child pornography, cybercrimes, and human trafficking.  During the investigation of these cases, I have

1  executed and participated in the execution of numerous search and arrest warrants and seized evidence

2  of violations of federal law.  Moreover, I am a federal law enforcement officer who is engaged in

3  enforcing the criminal laws, including 18 U.S.C. § 1591 and am authorized by the Attorney General to

4  request a search warrant.

5        3.    The facts in this affidavit come from my personal observations, my training and

6  experience, and information obtained from other law enforcement officers and witnesses.  Specifically,

7  some of the sources of the information in this affidavit include police reports, search warrant returns,

8  and information obtained from the Medford Police Department in Medford, Oregon.  This affidavit is

9  intended to show only that there is sufficient probable cause for the requested warrant and does not set

10  forth all of my knowledge about this matter.

11        4.    Based on my training and experience, and the facts set forth in this affidavit, there is

12  probable cause to believe that violations of 18 U.S.C § 1591(a)(1), (b)(2), Sex Trafficking of a Child,

13  Conspiracy to Engage in Sex Trafficking of a Child, in violation of 18 U.S.C. § 1594(c), and

14  Transportation with Intent to Engage in Criminal Sexual Activity, in violation of 18 U.S.C. § 2423(a),

15  have been committed by Dawniel SANTANGELO and Lucious ROY.  There is also probable cause to

16  believe that the items described in Attachment B will constitute evidence, contraband, and

17  instrumentalities of these criminal violations.

18        **II.**     **IDENTIFICATION OF THE DEVICES TO BE EXAMINED**

19        5.    The property to be searched includes nine electronic devices, further described in

20  Attachment A (hereinafter collectively, "the Subject Devices").  The Subject Devices are currently

21  stored at the Federal Bureau of Investigation, 2001 Freedom Way, Roseville, California.

22        6.    The applied-for warrant would authorize the forensic examination of the Subject Devices

23  for the purpose of identifying electronically stored data particularly described in Attachment B.  The

24  Subject Devices are further described below:

25        a.    DEVICE 1, a gray LG cell Phone, serial number: 902CYZP0653077, which was seized

26              from Victim 1, a female known to law enforcement who was 15 years old when

27              DEVICE 1 was seized.

28

b.  DEVICE 2, a black LG cell phone with a blue case, serial number: 902CYBD0677093, which was seized from ROY.

c.  DEVICE 3, a black LG cell phone, serial number containing the last five digits: 31546, which was seized from ROY and SANTANGELO's vehicle.

d.  DEVICE 4, a black Samsung tablet, serial number: 0Q9T91HJ900360V, which was seized from ROY and SANTANGELO's vehicle.

e.   DEVICE 5, a Trueslim cell phone, serial number: SSB508E100065479, which was seized from Alizabeth RICE's purse.

f.  DEVICE 6, a black LG cell phone, serial number: 901KPVH0926063, which was seized from SANTANGELO's purse.

g.  DEVICE 7, a black LG cell phone, serial number: 355380097581273.

h.  DEVICE 8, an HP laptop computer, serial number: 5CD5432Z8J, seized from the floor of ROY and SANTANGELO's vehicle.

i.  DEVICE 9, a black LG cell phone, serial number: 902CYZP0672973, which was seized from SANTANGELO.

## III.      BACKGROUND REGARDING SEX TRAFFICKING

7.      Through my training and experience, I am aware of the following traits of prostitution and how the Internet is used to further the activities of illegal prostitution:

a.  Individuals who, through enticement, intimidation, or force, enlist individuals to become prostitutes, and who profit from the prostitution of others are called "pimps."

b.  Pimps, as well as prostitutes, have embraced the Internet as a means of advertising services and communicating with customers.

c.  Pimps often try to recruit new victims by using social media sites such as Facebook.com, Instagram and Snapchat.  Pimps often communicate with victims via social media applications after recruiting a victim to work for them.  Prostitutes working for the same pimp will often use social media to communicate with each other and their pimp.

d.  Certain websites have been created to facilitate communications between prostitutes and

their clients.  The more notable websites formerly relevant to prostitution in the Eastern District of California include the "Adult" section of Backpage.com as well as nightshift.co.  New up and coming escort websites include Skipthegames.com, CityXGuide.com, Megapersonals.com, and Adultlook.com.  These websites allow pictures to be posted as part of advertisements.

e.  Pimps attempt to avoid the attention of law enforcement through the anonymity provided by the Internet.

f.  Prostitutes are instructed by the pimp on how to detect undercover officers.  When arranging "dates" with clients over the phone, prostitutes rarely discuss the details regarding the sexual acts that are to occur.  Those more detailed discussion typically occur when the prostitute and client meet in person.

g.  Pimps at times use physical force, threats of physical force, and/or fear to control the prostitutes.  They control the prostitutes' actions, and collect money earned through acts of prostitution.  Pimps facilitate prostitution by transporting the prostitutes to locations where the prostitution occurs.  The pimps, at times, transport prostitutes across state lines for the purpose of prostitution.

h.  Prostitutes and/or pimps often stay in motels/hotels while traveling.  The prostitutes and pimps travel via rental vehicles, vehicles, airplane, or bus during their travels.  The pimps use the monies earned during acts of prostitution to purchase food, lodging, clothing and other items.

i.  Pimps sometimes possess firearms to facilitate their sex trafficking.

j.  The pimps often provide drugs to the prostitutes to suppress their appetites and to assist with the demands of performing sex acts for long periods of time.

k.  The term "daddy" is commonly used by prostitutes when referring to their pimps.  The pimp's phone number is often programmed as "daddy" in the prostitutes' cell phone.

l.  Pimps often request or force their prostitutes to obtain tattoos of names and/or symbols that are related to the pimp's name or nickname.

m.  Prostitutes use cellular telephones as a way to communicate with clients.  These phone

numbers are included in the advertisements that are posted on various prostitution-facilitating websites.  Prostitutes, pimps and clients communicate via voice calls, text messages, and messages over social media platforms.

n.  Pimps and prostitutes use cellular telephones to transmit photographs to email accounts and/or prostitution advertisement websites.

o.  Pimps and prostitutes use personal e-mail accounts to post their advertisements on prostitution advertisement websites.

## IV.   PROBABLE CAUSE

### A.   Introduction

8.      This investigation arises from Lucious ROY and Dawniel SANTANGELO's efforts to traffic children in Northern California and Oregon.  In 2019, a grand jury returned an indictment charging ROY and SANTANGELO with sex trafficking of a child targeting two minors other than Victim 1: then-17-year-old Victim 2 and then-16-year-old Victim 3.[1]  The Subject Devices were initially seized by local law enforcement after law enforcement found ROY and SANTANGELO in a Medford, Oregon motel room with then-15-year-old runaway Victim 1.

### B.   On May 9, 2019, Medford Police stopped ROY and Victim 1 and SANTANGELO impersonated Victim 1's mother.

9.      On May 9, 2019, at approximately 12:29 a.m., Medford police officers conducted a traffic stop on a silver Hyundai Elantra with California license plate number: 6HOT734.  Medford Police Officer Cartwright identified a black male in the driver's seat and a Hispanic female in the passenger seat who appeared to be a minor.  The driver presented Officer Cartwright with a California identification card which identified him as Lucious James ROY.  ROY stated "I see you looking around the car, we ain't got shit, we from California, I'm out here visiting my girl's daughter's birthday."

10.     The female passenger, Victim 1, gave officers a false name and date of birth.  Officers asked ROY how he knew Victim 1.  ROY responded, "That's like my step daughter."

///

---

[1] ROY pleaded guilty to Conspiracy to Engage in Sex Trafficking of a Child, in violation of 18 U.S.C. § 1594(c) and was sentenced in April 2021.

11.     In an attempt to identify Victim 1, officers asked to look at Victim 1's social media account.  Victim 1 showed officers her Instagram account.  The username displayed was "s.niave."  Officers did not see an actual name attached to Victim 1's profile and exited the account.

12.     Victim 1 told officers she lived in Modesto, California and that her phone number was (209) 922-8972.  Medford Police Officer Moore inquired about how Victim 1 knew ROY.  Victim 1 responded ROY was her mother's "boyfriend."

13.     Officers asked Victim 1 to contact her mother to confirm the story they provided.  Victim 1 called an adult female purporting to be her mother and told the female that she had been pulled over and officers believed she was providing a fake name.  Officers asked the person purporting to be Victim 1's mother to provide Victim 1's social security number.  The female purporting to be Victim 1's mother was unable to provide the number.

14.     Officers then asked the female purporting to be Victim 1's mother for her address in Stockton.  The female provided the address 707 Hammer Lane and stated that Victim 1's birthdate was December 12, 2001, which would have made Victim 1 17 years old at the time.  However, Victim 1 had already given officers a false birthdate of December 5, 2000, which would have made her 18 years old.

15.     Officers asked Victim 1 for her mother's name.  Victim 1 stated it was "Dawniel," but indicated that she has never been able to pronounce her last name.  Victim 1 began saying "San…tan" and advised she could not pronounce her mother's name.  ROY was issued a citation for Improper Display, No Operators License and Driving Uninsured.  Both ROY and Victim 1 were released from the stop.

16.     The following day, Victim 1's actual stepmother identified Victim 1 in online prostitution advertisements.  SANTANGELO was visible in at least one of the prostitution advertisements.  The telephone number (209) 922-8972 was linked to 15 prostitution advertisements on multiple websites.

**C.     On May 10, 2019, Medford Police found ROY and SANTANGELO in a motel room with Victim 1 and an adult female who was part of ROY and SANTANGELO's pimping operation.**

17.     On May 10, 2019, at approximately 5:09 a.m., Medford police officers were dispatched to the Motel 6 North on 2400 Biddle Road in Medford, Oregon.  They were responding to a report

1  regarding a 15-year-old runaway from California.  The parents of the 15-year-old, Victim 1's father and

2  stepmother, reported that Victim 1 had called the stepmother from a stranger's telephone.  They

3  indicated that Victim 1 was crying and telling her parents she wanted to come home.

4      18.    Victim 1's stepmother believed their daughter was being trafficked, meaning she was

5  being sold for sex as a prostitute.  Victim 1's stepmother said Victim 1 had run away with another

6  female friend from Modesto, California.  Victim 1's stepmother indicated there was a history of Victim

7  1 running away and engaging in prostitution since about 2018.  Victim 1's stepmother had previously

8  reported Victim 1 as missing child with the Modesto County Sheriff's Office.

9      19.    When Medford police officers arrived at the Motel 6, they saw the 2009 Hyundai Elantra

10  with California license plate 6HOT734 that ROY and Victim 1 were stopped in the previous night

11  (hereinafter, the "Hyundai").  The car was parked in the south Motel 6 parking lot, east of rooms 153,

12  154, and 155.

13      20.    Officers entered the Motel 6 lobby and spoke to the night clerk who was able to find the

14  room number associated with the Hyundai.  Room 153 was associated with the Hyundai.  The clerk told

15  officers the room was rented to SANTANGELO.  Also registered to the room was Alizabeth RICE.

16      a.    During the course of this investigation, law enforcement has discovered evidence that

17  RICE participated in ROY and SANTANGELO's pimping operation.  In the fall of

18  2018, SANTANGELO recruited then-18-year-old RICE and her 17-year-old friend,

19  Victim 2, in a Stockton liquor store parking lot near the females' high school.  Over the

20  next few months, SANTANGELO and ROY took RICE and Victim 2 to motels in

21  Northern California to engage in commercial sex acts.[2]

22

---

23      [2] Also during the fall of 2018, Victim 3 was engaged in prostitution as part of ROY and
SANTANGELO's pimping operation.  Victim 3 reported that she engaged in commercial sex acts on the

24  streets of Oakland.  She performed oral sex on two men and gave the money from those encounters to
ROY.  According to Victim 3, SANTANGELO was present during this time period and coached Victim

25  3 on how to perform commercial sex acts.

26      ROY, SANTANGELO, and Victim 3 communicated via Instagram.  Law enforcement obtained
a photo of Victim 2, Victim 3, and SANTANGELO on a bed in revealing clothing.  In an Instagram

27  message form Minor 3 to ROY, Minor 3 said: "You're the only nigga I'll ever go out and sell my pussy
for."

28      In an Instagram group chat among SANTANGELO, RICE, and Victim 2, they discussed using
Victim 3 to make money.  RICE and Victim 2 told SANTANGELO to be careful with Victim 3, because

21.     The Motel 6 clerk had spoken to Victim 1 but had not called 9-1-1 because her parents and another Motel 6 North guest had told the clerk not to.  Officers then approached room 153.  Officers knocked on the door and identified themselves as the police.  After knocking, a male in Room 152 opened his door.  Officers asked the male if he had seen a female and described what they believed Victim 1 was wearing.  The man in Room 152 said he had seen a female matching that description walking around earlier in the night.

22.     Officers returned to the motel's front desk to obtain a keycard for Room 153.  Based on the totality of the circumstances and information provided by Victim 1's stepmother, the officers believed there were possibly two juvenile runaways from California involved in child sex trafficking located in the hotel room.  Based on the exigency of the circumstance, officers believed it was necessary to enter Room 153 if the occupants were unwilling to open the door.  A motel staff member gave the officers a keycard for Room 153.

23.     When officers returned to Room 153, Victim 1's stepmother told officers that Victim 1 had called and told her that she was in the Room 153 and would be coming out.  When she was talking to Victim 1, Victim 1's stepmother could hear people in the background yelling for others to be quiet and not open the door.

24.     The officers arrived at Room 153 and were waiting for backup officers when they heard noise at the door.  While the officers were standing in the hallway several rooms away, it appeared to the officers the occupants of Room 153 were going to open the door.  A teenage female, later identified as Victim 1, exited the room wearing clothing that was different than what was previously described for Victim 1.  Officers opened the door to Room 153 with a keycard, however, a female inside secured the door with the security door latch.  The female was later identified as SANTANGELO.  Officers spoke with her through the small opening in the door and asked her to open the door.  A few seconds later, she unlatched the door and opened it.

25.     After opening the door to the room, SANTANGELO exited and other officers spoke to her outside.  Police officers entered Room 153 to secure it.  Inside the room, officers found RICE lying

---

"she's hella young."

1   under the covers on one of the beds, loudly exclaiming "Whoa whoa whoa what the hell." RICE exited

2   the room and spoke to officers outside.

3       26.    Officers found ROY inside the bathroom. He immediately went to the ground when

4   contacted by officers. The motel room was cleared and ROY was detained in handcuffs.

5       **D.**    **Police officers identified ROY.**

6       27.    Medford police identified ROY using the identification they found in ROY's wallet.

7   Officers asked ROY if he knew why police were at the motel room. ROY stated "naw," but then said

8   that Victim 1 told them that "her people called." Officers told ROY that law enforcement was at the

9   motel room because there was a minor runaway or missing person.

10       28.    Officers asked ROY what other motel rooms Victim 1 was visiting. ROY said Victim 1

11   was going upstairs and also in front of the motel with a white male. ROY said he did not bring Victim 1

12   to Medford, Oregon from California. ROY said he found out Victim 1 was a minor the day prior when

13   he was stopped by Medford police officers.

14       **E.**    **ROY consented to a search of the motel room**

15       29.    Medford police obtained ROY's consent to search the motel room. ROY agreed to allow

16   a search of his room. A Medford police officer asked about ROY's car in the parking lot. ROY

17   indicated that he would consent to a search of the car, but he said it actually belonged to

18   SANTANGELO and officers would have to ask her. Medford Police Sergeant Donald Lane later

19   obtained verbal consent from SANTANGELO to search the Hyundai Elantra.

20       30.    ROY described where each of the occupants of the room had been sleeping. The bed

21   farthest from the motel door, ROY stated, was the bed in which he and SANTANGELO slept. ROY

22   said the bed closet to the door was where RICE and Victim 1 slept. During the search of Room 153,

23   officers found the following item: DEVICE 2, a black LG cell phone, Model LM-X220MA, Serial

24   Number: 902CYBD0677093 with a blue case. DEVICE 2 was located under a pillow.

25       **F.**    **Interview of RICE**

26       31.    RICE told Medford police that she had bought a new phone in Oregon. RICE's plan was

27   to buy a new phone when she got back to California and put her old phone number on it.

28       32.    RICE said SANTANGELO was from Medford and they traveled to Medford because it

1   was SANTANGELO daughter's birthday.  RICE claimed she left Stockton the day prior at

2   approximately 8:00 a.m.  SANTANGELO picked her up from her house.  RICE claimed they (i.e.,

3   RICE, SANTANGELO, and ROY) found Victim 1 in Oregon.  According to RICE, Victim 1 was

4   stranded and told them she was 18 years old.  RICE later said she had met Victim 1 in California

5   approximately one week prior.  She said she met her walking around.

6       33.    RICE had personal belongings that Medford police officers removed from the motel

7   room.  Officers took those items into the interview with RICE.  During the interview, RICE consented to

8   law enforcement searching her belongings.  During the subsequent search of RICE's belongings, police

9   found an additional cell phone.  In total, two cell phones were seized from RICE:

10          a.   DEVICE 5, a Trueslim cell phone, serial number: SSB508E100065479.  Medford

11              police found this item in RICE's purse.

12          b.   DEVICE 7, a black LG cell phone, model: LM-X410MK, serial number:

13              355380097581273.  RICE gave officers this device.  RICE told officers that

14              SANTANGELO bought this phone for her.

15      **G.    Interview of Victim 1**

16      34.    Victim 1 told Medford police officers that she and her friend had been planning for a long

17   time to leave California.  Victim 1 said they saved money and took an Uber from Modesto to Stockton.

18   Victim 1 claimed that for the trip from Stockton to Medford they hitchhiked and found other means of

19   travel.  Victim 1 said they arrived in Oregon a week and a half after she left her father's house. Victim 1

20   said she left her father's house two weeks ago.  Victim 1 claimed that she and her friend got into a fight

21   by the truck tire store across from the Motel 6 and split ways after the fight.  Victim 1 claimed that after

22   their fight, Victim 1 was walking around crying.  Victim 1 claimed that then she met SANTANGELO

23   and asked to use her phone.  Victim 1 said that she called home and wanted to be picked up.

24      35.    Victim 1 also indicated that SANTANGELO offered to let her stay in their motel room

25   until Victim 1's parents arrived from California.  Victim 1 said she accepted the offer and went to sleep.

26   At 5:00 a.m., Victim 1 said she received a call from her stepmother indicating that they had arrived.

27   Victim 1 said she got her stuff and walked outside.  Victim 1 said she saw the police.  Victim 1 told

28   officers she had not met ROY, but later stated that she had seen him but had not really talked to him.

36.     Victim 1 told police that she did not know RICE and that she had met RICE the same day she met SANTANGELO.  Victim 1 stated she had never seen RICE before, but met her on Instagram.  Victim 1 denied engaging in prostitution or knowing ROY.  She also denied ever having sex with ROY.

37.     Victim 1 consented to a search of her bag.  During the search, officers found lingerie and a yellow top, which matched a top that RICE previously stated she had purchased.  Officers told Victim 1 that RICE had the same one.  Victim 1 began to say they bought them together, then changed what she said and stated she noticed they had the same tops when they were at the motel.

38.     The cell phone that officers seized from Victim 1 was later booked into the Medford Police Department secure property control facility:

a.     DEVICE 1, a Gray LG cell phone, model: LM-X220MA, serial number: 902CYZP0653077, with a pink case, seized from Victim 1.

**H.     Interview of SANTANGELO**

39.     SANTANGELO told Medford police officers that she resided in Stockton, California.  SANTANGELO stated she had three children and family that lived in Medford, Oregon.  She said that her daughter had just turned 16-year-old and that was the reason for her trip to Oregon.

40.     An officer read SANTANGELO her Miranda rights and SANTAGELO replied "Uh-huh," indicating that she understood the admonition.  SANTANGELO said Victim 1 was waiting for a ride.  She indicated that Victim 1 asked if she could have somewhere to sleep until someone came and got her.  SANTANGELO said she did not know Victim 1 "like that," but had no idea of her age nor did she know of what friend Victim 1 was talking about.

41.     SANTANGELO said prostitution pays for "whatever" and it pays for her to live.  SANTANGELO added that it takes care of her children.  SANTANGELO stated they arrived in town on May 8 and stayed at the Motel 6 North.  SANTANGELO stated it was "us," SANTANGELO, ROY, and RICE in the room.

42.     SANTANGELO was asked whether she would have communications on her phone between her and Victim 1.  SANTANGELO stated, "I don't know, we might."  When asked how far back those communications would go, SANTANGELO put her head on the table like she was resting and began yawning and stated, "a day, yesterday."

43.     Officers asked SANTANGELO which number she used to post prostitution advertisements.  SANTANGELO replied, "my number," (209) 594-2171.  Officers used SANTANGELO's telephone number and an online tool that searches websites known to contain prostitution advertisements to identify 19 prostitution advertisements that contained photos of SANTANGELO.  SANTANGELO confirmed these were her prostitution advertisements.

44.     Prostitution advertisements were posted on the escort website Skipthegames.com, under phone number (209) 594-2171.  The advertisements were posted for locations from Salinas, California to Medford Oregon, from May 4, 2019 through May 9, 2019.  The posting began in Oregon on May 7, 2019.

45.     SANTANGELO said, "Yeah, I didn't, I didn't get any, I didn't get lucky (laughed) however you put it."  When asked if RICE got "lucky," SANTANGELO stated, "No, I don't know, I wasn't in the room at all times."

46.     SANTANGELO said they only had one room and if they, or she, would do an in-call, then everybody would leave the room while the date (or prostitution encounter) was happening.  She did not say this happened, only that that would be how she would do it.

47.     SANTANGELO said she had one cell phone, DEVICE 9, and indicated that it was the device she had with her during the interview.  She also indicated that she had an old phone, DEVICE 6, that was turned off and located in her black bag.

48.     SANTANGELO said the following regarding the content on DEVICE 9:  "Well, of course there is going to be content, SkipTheGames is going to be in that phone, that's my phone."

49.     Another officer entered the interview carrying SANTANGELO's black purse and asked if it were hers; SANTANGELO said it belonged to her.  Officers located a phone from her purse and SANTANGELO stated it was her old phone.  The phones were seized and later logged into Medford Police Property Control:

a.   DEVICE 6, a Black LG cell phone seized from SANTANGELO's purse; and

b.   DEVICE 9, a Black LG cell phone that was seized from SANTANGELO.

50.     Officers located a bag containing a cellular phone contract.  RICE had told officers that SANTANGELO and ROY had bought her a new phone.  The contract was in SANTANGELO's name

1   but it was signed by ROY.

2       **I.**    **Medford Police seized additional devices.**

3       51.    During the interviews and search related to this incident, officers located three additional

4   devices during a consent search of the silver Hyundai Elantra with California license plate: 6HOT734.

5   Those devices are the following:

6          a.   DEVICE 3, a black LG cell phone, serial number's last 5 digits: 31546, which was

7              seized from the Hyundai;

8          b.   DEVICE 4, a Black Samsung tablet, serial number: 0Q9T91HJ900360V, which was

9              seized from the Hyundai;

10         c.   DEVICE 8, an HP laptop computer, serial number: 5CD5432Z8J, which was found on

11             the floor of the Hyundai.

12                       **V.**     **TECHNICAL TERMS**

13       52.    Based on my training and experience, I use the following technical terms to convey the

14   following meanings:

15          a.   Wireless telephone:  A wireless telephone (or mobile telephone, or cellular telephone) is

16              a handheld wireless device used for voice and data communication through radio

17              signals.  These telephones send signals through networks of transmitter/receivers,

18              enabling communication with other wireless telephones or traditional "land line"

19              telephones.  A wireless telephone usually contains a "call log," which records the

20              telephone number, date, and time of calls made to and from the phone.  In addition to

21              enabling voice communications, wireless telephones offer a broad range of capabilities.

22              These capabilities include: storing names and phone numbers in electronic "address

23              books;" sending, receiving, and storing text messages and e-mail; taking, sending,

24              receiving, and storing still photographs and moving video; storing and playing back

25              audio files; storing dates, appointments, and other information on personal calendars;

26              and accessing and downloading information from the Internet.  Wireless telephones

27              may also include global positioning system ("GPS") technology for determining the

28              location of the device.

b.   Digital camera:  A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film.  Digital cameras use a variety of fixed and removable storage media to store their recorded images.  Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader.  Removable storage media include various types of flash memory cards or miniature hard drives.  Most digital cameras also include a screen for viewing the stored images.  This storage media can contain any digital data, including data unrelated to photographs or videos.

c.   Portable media player:  A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files.  However, a portable media player can also store other digital data.  Some portable media players can use removable storage media.  Removable storage media include various types of flash memory cards or miniature hard drives.  This removable storage media can also store any digital data.  Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

d.   GPS:  A GPS navigation device uses the Global Positioning System to display its current location.  It often contains records the locations where it has been.  Some GPS navigation devices can give a user driving or walking directions to another location.  These devices can contain records of the addresses or locations involved in such navigation.  The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth.  Each satellite contains an extremely accurate clock.  Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers.  These signals are sent by radio, using specifications that are publicly available.  A GPS antenna on Earth can receive those signals.  When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of

1    precision.

2    e.  PDA:  A personal digital assistant, or PDA, is a handheld electronic device used for

3    storing data (such as names, addresses, appointments or notes) and utilizing computer

4    programs.  Some PDAs also function as wireless communication devices and are used

5    to access the Internet and send and receive e-mail.  PDAs usually include a memory

6    card or other removable storage media for storing data and a keyboard and/or touch

7    screen for entering data.  Removable storage media include various types of flash

8    memory cards or miniature hard drives.  This removable storage media can store any

9    digital data.  Most PDAs run computer software, giving them many of the same

10    capabilities as personal computers.  For example, PDA users can work with word-

11    processing documents,

12    spreadsheets, and presentations.  PDAs may also include global positioning system

13    ("GPS") technology for determining the location of the device.

14    f.  IP Address: An Internet Protocol address (or simply "IP address") is a unique numeric

15    address used by computers on the Internet.  An IP address is a series of four numbers,

16    each in the range 0-255, separated by periods (e.g., 121.56.97.178).  Every computer

17    attached to the Internet computer must be assigned an IP address so that Internet traffic

18    sent from and directed to that computer may be directed properly from its source to its

19    destination.  Most Internet service providers control a range of IP addresses.  Some

20    computers have static-that is, long-term-IP addresses, while other computers have

21    dynamic-that is, frequently changed-IP addresses.

22    g.  Internet: The Internet is a global network of computers and other electronic devices that

23    communicate with each other.  Due to the structure of the Internet, connections between

24    devices on the Internet often cross state and international borders, even when the

25    devices communicating with each other are in the same state.

26    53.    Based on my training, experience, and research, I know that the Subject Devices have

27  capabilities that allow them to serve as a wireless telephone, digital camera, portable media player, GPS

28  navigation device, and PDA.  In my training and experience, examining data stored on devices of this

1  type can uncover, among other things, evidence that reveals or suggests who possessed or used the

2  device.

3        **VI.**      **ELECTRONIC STORAGE AND FORENSIC ANALYSIS**

4        54.      Based on my knowledge, training, and experience, I know that electronic devices can

5  store information for long periods of time.  Similarly, things that have been viewed via the Internet are

6  typically stored for some period of time on the device.  This information can sometimes be recovered

7  with forensics tools.

8        55.      <u>Forensic evidence.</u>  As further described in Attachment B, this application seeks

9  permission to locate not only electronically stored information that might serve as direct evidence of the

10  crimes described on the warrant, but also forensic evidence that establishes how the Subject Devices

11  were used, the purpose of its use, who used it, and when.  There is probable cause to believe that this

12  forensic electronic evidence might be on the Subject Devices because:

13        a.    Data on the storage medium can provide evidence of a file that was once on the storage

14            medium but has since been deleted or edited, or of a deleted portion of a file (such as a

15            paragraph that has been deleted from a word processing file

16        b.    Forensic evidence on a device can also indicate who has used or controlled the device.

17            This "user attribution" evidence is analogous to the search for "indicia of occupancy"

18            while executing a search warrant at a residence.

19        c.    A person with appropriate familiarity with how an electronic device works may, after

20            examining this forensic evidence in its proper context, be able to draw conclusions

21            about how electronic devices were used, the purpose of their use, who used them, and

22            when.

23        d.    The process of identifying the exact electronically stored information on a storage

24            medium that are necessary to draw an accurate conclusion is a dynamic process.

25            Electronic evidence is not always data that can be merely reviewed by a review team

26            and passed along to investigators.  Whether data stored on a computer is evidence may

27            depend on other information stored on the computer and the application of knowledge

28            about how a computer behaves.  Therefore, contextual information necessary to

16

1    understand other evidence also falls within the scope of the warrant.

2       e.  Further, in finding evidence of how a device was used, the purpose of its use, who used

3          it, and when, sometimes it is necessary to establish that a particular thing is not present

4          on a storage medium.

5      56.   <u>Nature of examination.</u>  Based on the foregoing, and consistent with Rule 41(e)(2)(B), the

6 warrant I am applying for would permit the examination of the Subject Devices consistent with the

7 warrant.  The examination may require authorities to employ techniques, including but not limited to

8 computer-assisted scans of the entire medium, that might expose many parts of the device to human

9 inspection in order to determine whether it is evidence described by the warrant.

10      57.   <u>Manner of execution.</u>  Because this warrant seeks only permission to examine devices

11 already in law enforcement's possession, the execution of this warrant does not involve the physical

12 intrusion onto a premises.  Consequently, I submit there is reasonable cause for the Court to authorize

13 execution of the warrant at any time in the day or night.

14                  [The remainder of this page is blank.]

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## VII.   <u>CONCLUSION</u>

58.    I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the Subject Devices described in Attachment A to seek the items described in Attachment B.

Respectfully submitted,

/s/ Matthew Kamilos
_____

Matthew Kamilos
Special Agent
Federal Bureau of Investigation

Subscribed and sworn telephonically on:

June 28, 2021
_____

ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE

/s/ Brian A. Fogerty
_____
Approved as to form by:
Assistant U.S. Attorney Brian A. Fogerty

AO 93  (Rev. 11/13) Search and Seizure Warrant

# UNITED STATES DISTRICT COURT

for the

Eastern District of California

| | | |
|---|---|---|
| In the Matter of the Search of | ) | |
| nine electronic devices, further described in Attachment A, currently located at the Federal Bureau of Investigation, 2001 Freedom Way, Roseville, California | ) ) ) ) ) | Case No.  2:21-sw-0548 AC |

## SEARCH AND SEIZURE WARRANT

To:      Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the _____Eastern_____ District of _____California_____
*(identify the person or describe the property to be searched and give its location)*:

**SEE ATTACHMENT A, attached hereto and incorporated by reference.**

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

**SEE ATTACHMENT B, attached hereto and incorporated by reference.**

**YOU ARE COMMANDED** to execute this warrant on or before _____July 12, 2021_____ *(not to exceed 14 days)*
☐ in the daytime 6:00 a.m. to 10:00 p.m.   ☑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to: <u>any authorized U.S. Magistrate Judge in the Eastern District of California.</u>

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*

☐ for _____ days *(not to exceed 30)*   ☐ until, the facts justifying, the later specific date of _____ .

Date and time issued:   June 28, 2021 @ 12:16 p.m.

City and state:    Sacramento, California

ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE

AO 93  (Rev. 11/13) Search and Seizure Warrant (Page 2) (modified)

| **Return** | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name of any person(s) seized:

**Certification**

I swear that this inventory is a true and detailed account of the person or property taken by me on the warrant.

_____

Subscribed, sworn to, and returned before me this date.

_____

_____
            Signature of Judge                                    Date

## <u>ATTACHMENT A</u>

The property to be searched includes the following electronic devices (collectively, the "Subject Devices"):

- DEVICE 1, a Gray LG cell phone, serial number: 902CYZP0653077, which was seized from Victim 1.

 

- DEVICE 2, a Black LG cell phone with a blue case, serial number: 902CYBD0677093, which was seized from Lucious ROY.

 

- DEVICE 3, a Black LG cell phone, serial number with last 5 digits: 31546, which was seized from ROY and Dawniel SANTANGELO's vehicle.

 

- DEVICE 4, a Black Samsung tablet (Chromebook), serial number: 0Q9T91HJ900360V, which was seized from ROY and SANTANGELO's vehicle.

 

- DEVICE 5, a Trueslim cell phone, serial number: SSB508E100065479, which was seized from Alizabeth RICE's purse.

 

- DEVICE 6, a black LG cell phone, serial number 901KPVH0926063, which was seized from SANTAGELO's purse.

 

- DEVICE 7, a black LG cell phone, serial number: 355380097581273.

 

- DEVICE 8, an HP laptop computer, serial number 5CD5432Z8J, which was located on the floor of ROY and SANTANGELO's vehicle.

 



- DEVICE 9, a black LG cell phone, serial number 902CYZP0672973, seized from SANTANGELO.

 

This warrant authorizes the forensic examination of the Subject Devices for the purpose of identifying the electronically stored information described in Attachment B.

## ATTACHMENT B

1.      All records on the Subject Devices described in Attachment A that relate to violations of 18 U.S.C. §§ 1591(a)(1), (b)(2), 1594(c), and 2423(a) that involve ROY, SANTANGELO, and RICE:

      a.  Records, images, videos, and/or communications regarding and/or involving Victims 1, 2, and/or 3;

      b.  Records regarding Instagram account associated with username "s.niave";

      c.  Records, images, videos, and/or communications regarding the management of prostitution activity;

      d.  Records, images, videos, and/or communication regarding commercial sex acts;

      e.  Records, images, videos, and/or communications regarding online prostitution advertisements;

      f.  Records, images, videos and/or communications regarding the proceeds of prostitution activity;

      g.  Records, images, videos, and/or communications regarding hotel stays, including items regarding reservations, receipts, and/or methods of payment;

      h.  Records, images, and communications regarding the acquisition of condoms, reproductive health and/or hygiene products;

      i.  Records, images, videos, and/or communications regarding the physical location of (and transportation to and from) prostitution encounters, including geolocation information;

      j.  Records, images, videos, and/or communications regarding Victim 1's travel from California to Medford, Oregon in or around May 2019;

      k.  Records, images, videos, and/or communications regarding travel with Victims 1, 2, and/or 3;

      l.  Records, images, videos, and/or communications regarding the ownership, registration of a Hyundai Elantra with California license plate: 6HOT734;

      m.  Records, images, videos, and/or communication regarding SANTANGELO, ROY, and/or Victim 1's contact with Medford police on or about May 9, 2019;

      n.  Records, images, videos, and/or communication regarding any clothing items purchased for Victim 1.

2.      Evidence of user attribution showing who used or owned the Subject Devices at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

3.     This warrant authorizes a review of electronic storage media and electronically stored information seized or copied pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant.  The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts.  Pursuant to this warrant, the investigating agency may deliver a complete copy of the seized or copied electronic data to the custody and control of attorneys for the government and their support staff for their independent review.